**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 7** |
| | ) | |
| **CARTER ALLEN LAWSON** | ) | |
| **JAMI RENEE LAWSON** | ) | |
| | ) | **CASE NO. 05-73642** |
| DEBTORS. | ) | |

_____)_____

| | | |
|---|---|---|
| | ) | |
| **W CLARKSON McDOW,** | ) | |
| **UNITED STATES TRUSTEE,** | ) | |
| Movant | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **CARTER ALLEN LAWSON** | ) | |
| **JAMI RENEE LAWSON,** | ) | |
| Respondents. | ) | |

_____

<u>**MEMORANDUM DECISION**</u>

The matter before the Court is the United States Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b) filed March 7, 2006 in which the United States Trustee alleges that the Debtors, Carter and Jami Lawson, have available disposable income to make a substantial repayment of their unsecured debt over the course of a thirty-six month chapter 13 plan and that their bankruptcy filing constitutes a "substantial abuse" of the provisions of Chapter 7 of the Bankruptcy Code.  This Chapter 7 case was filed on September 16, 2005; therefore this case is controlled by the law in effect prior to the adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).  This matter was set for trial and heard on September 19, 2006.  The matter has been briefed by the parties and is now

-1-

ready for decision.  For the reasons stated below, the Court will grant the United States Trustee's

Motion.

## DISCUSSION OF PROCEEDINGS AND EVIDENCE

When prosecuting a motion to dismiss for alleged substantial abuse, Federal Rule

of Bankruptcy Procedure 1017(e)(1) requires the United States Trustee to "set forth in the

motion all matters to be submitted to the court for its consideration at the hearing."  The matters

relied upon by the United States Trustee may be summarized as follows:  The Debtors' schedules

were inaccurate in that the male Debtor's gross income was understated by $1,081 a month and

the female Debtor's income was overstated by $721 a month, resulting in a net $360 a month

understatement of their gross income and a $216 a month understatement of their net income.

The Debtors are alleged to have engaged in excessive consumer debt financing by their

purchases of a 60 inch "big screen" television for $2,399 in late 2004, which obligated them to a

monthly payment of $104, and a 2005 Jeep Wrangler in April 2005, which involved a $460

monthly payment.  At the time of the Jeep purchase, fewer than six months prior to their

bankruptcy filing, they already owned a 1992 model Chevrolet S10 Blazer and a 2000 model

Chevrolet Cavalier.  The Debtors' Schedule J is alleged to include expenses which are excessive,

specifically $400 in transportation expense and car payments of $788.  It is claimed that reducing

the Debtors' expenses to reasonable amounts and adjusting their reported income to reflect their

actual income would provide Debtors disposable income of over $350 a month, making possible

a chapter 13 plan which would pay over 50% of their unsecured debts in a 36 month plan.  It is

further alleged that the Debtors' bankruptcy filing was not precipitated by sudden illness,

calamity, disability or unemployment, but was the result of the Debtors' overspending over time

and their refusal to adjust cost of living expenditures to reflect the obligation to repay creditors. The United States Trustee claims that the Debtors have lived beyond their means as evidenced by a total of $15,723 of unsecured debt upon twenty-one credit cards and consumer accounts. The United States Trustee also criticizes the Debtors' intention to surrender the 1992 Chevrolet S10 while keeping the more expensive 2005 Jeep Wrangler with its accompanying higher costs for fuel, taxes and insurance.  Finally, the Motion asserts that "[k]eeping and paying for expensive, unnecessary luxury items while seeking discharge from one's debts is not acting with good faith towards one's creditors."

The Debtors signed the petition and schedules on September 2, 2005.  The case was filed on September 16, 2005.  The Debtors are married and have one child who was six years old at the time of filing.  The United States Trustee offered eleven exhibits at trial, all of which were stipulated by the Debtors and admitted into evidence.

On Schedule I the Debtors represented that Mr. Lawson had gross monthly income of $2,218.67, which left a net disposable income of $1,685.84 per month after payroll deductions of $532.83.  The Debtors reported that Mrs. Lawson had a gross monthly income of $2,108.90, which left a net disposable income of $1,720.29 after payroll deductions of $388.61. Against a combined monthly net income (*i.e.,* after payroll deductions) of $3,406.13, the Debtors reported monthly living expenses of $3,308.74, leaving a monthly surplus of $97.39.  The itemization of the monthly expenses reported on Schedule J is as follows:

| Mortgage Payment | $244.00 |
|---|---|
| Electricity and Heating Fuel | $150.00 |
| Water and Sewer | $55.00 |
| Telephone | $75.00 |
| Cable | $50.00 |

| | |
|---|---|
| Home Maintenance (repairs and upkeep) | $50.00 |
| Food | $400.00 |
| Clothing | $75.00 |
| Laundry and Dry Cleaning | $75.00 |
| Medical and Dental Expenses | $125.00 |
| Transportation (not including car payments) | $400.00 |
| Recreation | $75.00 |
| Charitable Contributions | $0.00 |
| Homeowner's Insurance | $40.00 |
| Auto Insurance | $130.00 |
| Real and Personal Property Taxes | $0.00 |
| Television Payment - American General | $104.09 |
| Jeep Wrangler Payment - Citifinancial Auto | $460.00 |
| Chevrolet Cavalier Payment - U. S. Bank | $327.65 |
| Bedroom Furniture Payment - Citifinancial | $203.00 |
| Child Care | $270.00 |
| **Total Expenses** | **$3,308.74** |

According to their schedules, the Debtors own no real estate, a 2000 model Giles mobile home valued at $16,900, subject to a security interest securing a debt to "Greentree"[1] in the amount of $16,147.83.  The Debtors reported owning three motor vehicles, the Jeep Wrangler valued at $17,000, the S10 Blazer valued at $1,775, and the Chevrolet Cavalier valued at $3,375, furniture, furnishings and appliances valued at $5,000 of which $2,000 is allocated to the 60 inch television, two bank accounts totaling $100, clothing valued at $500, and engagement and wedding rings valued at $500.  According to Mr. Lawson's testimony, the Debtors owned two other televisions at the time they purchased the big screen television which Mrs. Lawson intended as a Christmas gift for the family.

The Debtors reported secured debt totaling $48,694.81 on Schedule D, comprised of American General Finance's claim of $2,398.65 secured by the television valued at $2,000.00;

---

[1] During this case Green Tree Servicing, LLC sought and obtained relief from the automatic stay.  Based on the Debtors' testimony at trial, it appears that the parties must have reached some accommodation as the Debtors' place of residence seems not to have changed.

a second American General claim in the amount of $4,647.33 secured by the 1992 Chevrolet

Blazer valued at $1,775; Citifinancial's claim of $ 0 (sic) secured by two bedroom suites valued

at $2,000; Citifinancial Auto's claim of $23,771 secured by the Jeep Wrangler valued at

$17,000; Greentree's claim of $16,147.83 secured by the Giles mobile home valued at $16,900,

and U. S. Bank's claim of $2,000 secured by the Chevrolet Cavalier valued at $3,375.  In their

Statement of Financial Affairs they reported that the Chevrolet Cavalier had been repossessed on

August 29, 2005, just days before they signed their petition.  The Debtors filed a Statement of

Intention in which they indicated their plan to surrender the 1992 S10 Blazer to American

General Finance and to retain and continue making payments upon the television, bedroom

suites, Jeep Wrangler, mobile home, and Chevrolet Cavalier.  The Debtors reported general

unsecured claims totaling $15,722.85, comprised of nine medical bills totaling $1,162.49 and

twelve credit card and other consumer accounts having a combined total balance of $14,560.36.

After the "section 341" meeting of creditors, the Debtors filed amended schedules

I and J which reported materially different figures for both their income and expenses.  Mr.

Lawson's newly reported gross monthly income of $3,488 and net income of $2,650 were

significantly higher compared with the originally scheduled figures of $2,218.67 and $1,685.90,

respectively.  Mrs. Lawson's new income figures reported gross monthly income of $1,368.10

and net income of $1,109.20, significantly below initially scheduled figures of $2,108.90 and

$1,720.29, respectively.  The amended Schedule J also reports additional expenses of $130 per

month for cell phone service, $100 per month for lot rent, $30 per month for personal property

taxes, and $50 per month for school lunches and supplies, and increases of $50 (to $100) per

month for home maintenance and $25 (to $425) per month for transportation, excluding car

payments.  This amended schedule also omits the $327.65 amount for the  payment for the

Chevrolet Cavalier which was repossessed shortly before the filing date.  The net result of these

changes to their income and expenses was a combined net monthly take home pay of $3,759.20

per month and budgeted expenses of $3,366.09 per month, a surplus of income over expenses of

$393.11 monthly.  According to the Trial Memorandum of Debtors, "it was discovered [at trial]

that the debtors had overstated their monthly income in their amended Schedule I".

Accordingly, eight days after trial they filed a second amended Schedule I, which reported

average gross monthly incomes of $3,299.95 and $1,387.96 for the male and female Debtors,

respectively, and net monthly take home pay in the amounts of $2,509.54 and $1,039.73.  The

sum of the latter two figures provides a combined net monthly take home pay of $3,544.27.  This

figure, if accepted, would result in a surplus of $178.18 over their indicated monthly expense

figure of $3,366.09 from their amended Schedule J, which was not again amended after trial.

The Debtors testified at trial, however, that they had no money left over at the end of the month

after paying their living expenses.

The Debtors take the position that their petition does not present substantial

abuse of the chapter 7 provisions of the Bankruptcy Code because they testified that when they

incurred the obligations for the 60 inch television and 2005 Jeep Wrangler, they reasonably

believed that they would be able to pay for them, that they need a reliable four wheel drive

vehicle because they live about thirty miles away from their employment and have to travel over

mountainous roads, that the 1992 model S10 Blazer had become unreliable and in poor

condition, that the United States Trustee's staff's own calculations of Mr. and Mrs. Lawson's

year-to-date income at the time of filing demonstrates that their actual income was overstated

even in their initially amended schedules and that to use such figures, in effect to try and hold them to figures which were clearly the result of a mistake, would be entirely unjust, and that the actual difference between their income and budgeted expenses is not enough to determine that they have committed any abuse of the Bankruptcy Code.

The Debtors' transportation arrangements are not entirely clear from the testimony given at trial. The Jeep Wrangler is their primary means of transportation. The Chevrolet Cavalier was repossessed prior to their bankruptcy filing. They still have possession of the S10 Blazer but they are not using it and it may be currently inoperable without needed repairs. There was testimony that Mr. Lawson rides with someone else to work and Mrs. Lawson brings him home. There was also testimony, however, that the parties now either own or use a 1996 Dodge Avenger vehicle which they have obtained since their bankruptcy filing by means of a gift from a member of one of their families. The evidence is not sufficient to permit the Court to make a reliable finding as to whether the Debtors would find it necessary to purchase any other vehicle within the term of a possible 36 month chapter 13 plan.

In his post-trial arguments to the Court in support of the Motion to Dismiss, the United States Trustee makes the following arguments with respect to the *Green*[2] factors:

*Ability to pay:*

The United States Trustee asserts based on the figures contained in the Debtors' amended Schedules I and J filed shortly after the 341 meeting, after allowing $4,000 for assumed

---

[2] *Green v. Staples (In re Green)*, 934 F.2d 568 (4th Cir. 1991).

deficiency claims, they could pay 53.7% of their unsecured debt even without surrendering the

60 inch television set.  The arithmetic and method for determining this percentage are contained

in U. S. Trustee's Exhibit no. 9.  If they were to surrender the television and the bedroom suites

of furniture, the U. S. Trustee asserts that their disposable income would be increased to $700.20

per month and "enable them to pay 100% of their unsecured debt" in fewer than 36 months.

*Sudden illness, calamity, disability or unemployment:*

        The United States Trustee asserts that the Debtors' bankruptcy was not

precipitated by sudden illness, calamity, disability or unemployment, but rather resulted from

"overspending over time and the refusal to adjust cost of living expenditures to reflect the

obligation to pay creditors."

*Incurred cash advances and made consumer purchases far in excess of ability to repay*:

        The United States Trustee asserts that the Debtors have made consumer purchases

in excess of their ability to repay.  It has not been argued, however, that such expenditures were

"far" in excess of their financial ability to pay.  He particularly focuses on the purchase of the

Jeep Wrangler and the big screen television within the year preceding bankruptcy, flatly stating

that such purchases "were neither reasonable nor necessary."  There has been no claim of use of

credit cards to obtain cash advances.

*Excessive and unreasonable family budget:*

        The United States Trustee asserts that the Debtors' monthly expenses are

excessive and unreasonable in light of their intention to keep the big screen television and

continue making the regular monthly payments of $104.19.

*Accuracy of the Debtors' schedules:*

The United States Trustee succinctly and effectively notes that, based upon a comparison of the figures contained in the original and amended Schedules I and J, the male Debtor's gross monthly income initially was understated by $1,269.33, the female Debtor's gross income was overstated by $740.80 per month, and their combined gross monthly income was understated by $528.53. Furthermore, Schedule J reported a monthly payment of $327.65 for the Chevrolet Cavalier although the Statement of Financial Affairs reported that such vehicle had been repossessed several days before the petition and schedules were filed.

*Bad faith:*

"Keeping and paying for expensive, unnecessary items such as the big screen TV while seeking discharge from one's debts is not acting with good faith towards one's creditors."

The Court makes the following FINDINGS OF FACT concerning the factors to be considered by it in determining the claim of substantial abuse advanced in the United States Trustee's Motion:

1. The Court finds those facts discussed above which are not indicated to be in dispute between the parties or otherwise the subject of conflicting evidence. The Court further finds, and this is not disputed by the Debtors, that their indebtedness is consumer debt within the meaning of 11 U.S.C. § 707(b).

2. While the consumer purchases for the television and a new Jeep Wrangler within the

year preceding their bankruptcy filing clearly demonstrate poor financial judgment on the

Debtors' part, they were not incurred with any expectation or plan of not paying for them and the

Debtors affirmatively believed that they would be able to pay for such purchases.

     3.  Perhaps the most challenging aspects of ruling upon the Motion before the Court are

determining the Debtors' actual ability to pay their creditors in a possible 36 month chapter 13

plan and the likely amount of claims to be allowed in a chapter 13 case administration.  Because

the figures contained in the post-trial amended version of Schedule I of the Debtors' incomes

match the United States Trustee's own calculations of such amounts and the Debtors' trial

testimony was that their take home pay was less than the figures contained in the previously

amended version of such Schedule, the Court will accept such last amended version as an

accurate reflection of their actual income, subject to certain modifications.  The Court will

disallow $105 of the total $205 monthly telephone charges as being clearly excessive and

unreasonable for individuals in their personal and financial circumstances.  Next, the Court will

accept the $2,200 figure testified to by Mrs. Lawson as being the petition date indebtedness

balance owing to Citifinancial for the furniture.  Such a balance could be amortized in 36

monthly payments of $71 each with an assumed 10% APR interest rate in a chapter 13 plan.

This would reduce the current amount being paid to this creditor by $132 per month ($203 - $71

= $132).  Such a plan would not oblige the Debtors to surrender any of their personal property

which they desire to retain.  Because the Debtors have not received any discharge in this case,

their Reaffirmation Agreement for the big screen television is still subject to rescission by the

Debtors.  If it were rescinded and restructured in a chapter 13 plan at a 10% APR interest rate

over 36 months, the monthly payment would be reduced from $104.09 to $77.41.  The total

-10-

payment to the chapter 13 trustee would therefore be the sum of the following for creditors to be

paid "inside" the plan:

| | |
|---|---|
| Available Excess Income over Expenses per last amended Schedule I | $178 |
| Disallowance of excess telephone expense | 105 |
| Citifinancial furniture account payment | 203 |
| American General TV account payment | 104 |
| TOTAL | $590 |

Multiplying this sum by 36 yields $21,240.  Utilizing the 7.50% chapter 13 trustee expense

factor and the projected $2,500 chapter 13 attorney's fee contained in exhibit no. 10 stipulated

by the parties results in a net presumed distribution to creditors being paid thru the plan of

$17,147 ($21,240  x .925 = $19,647 - $2,500 = $17,147).  The projected distribution to

unsecured creditors would be determined as follows:

| | |
|---|---|
| Gross Distribution to all creditors under the plan (rounded) | $17,147 |
| Less:   Restructured payments to Citifinancial (36 x $71 = | 2,526) |
|       Restructured payments to American General (36 x $77.41 = | 2,787) |
| Net Distribution to unsecured creditors | $11,834 |

If the television set were surrendered, the distribution to unsecured creditors would be increased

by the amount which otherwise would be paid to American General on its secured claim, which

would mean an increase of $2,787 to a new total of $14,621.

4.  The Debtors' scheduled liabilities in Schedule F total $15,772.85.  Stipulated Exhibit

no. 10 assumes deficiency claims from unsecured creditors of $4,000, based on an assumed

$3,000 deficiency for one or the other or both Chevrolet vehicles, the Court is unable to

determine which is intended, and a $1,000 deficiency from the presumed surrender of the

television.  The scheduled value for the 1992 S10 Blazer is $1,775 against a debt of $4,647.33.

However, Mrs. Lawson testified that such vehicle needed repairs costing more than its value and

that it remains parked in their yard because American General has never moved to repossess it.

That creditor has filed a proof of claim in this case asserting a value of $1,582 for this vehicle.

Based on Mrs. Lawson's testimony about the high mileage and poor condition of this vehicle,

the Court finds that assuming a liquidation value of more than $1,000 for it would be too

optimistic.  Utilizing such an assumed recovery would mean a deficiency claim for this vehicle

of $3,647.  The Debtors scheduled the 2000 Chevrolet Cavalier as being worth $3,375 against a

debt of $2,000.  Accordingly, the Court will not assume any deficiency claim for it.  Upon these

assumptions the unsecured claims to be addressed in a chapter 13 case would be $19,098

($15,723 + $3,375 = $19,098).  If the big screen televison set were surrendered, the Court will

accept the estimate of a $1,000 deficiency claim upon this account as contained in stipulated

Exhibit no. 11.  In that event the total projected unsecured claims would be $20,098.

5.  On the basis of the foregoing findings, the Court finds that the Debtors have the

ability to complete a chapter 13 plan which would provide for the payment of 62.0% (rounded)

of their unsecured claims if the television were not surrendered and 72.7% of such claims

(adjusted for the extra assumed deficiency claim) if such television were surrendered.

6.  The Debtors' bankruptcy filing was not occasioned by factors beyond their reasonable

control, such as sudden illness, calamity, disability or unemployment

7.  According to Mr. Charlie R. Jessee, the chapter 7 trustee, the Debtors at the section

341 meeting, in response to his questioning testified that the information contained in their

schedules was accurate and complete.  They later testified when certain apparent discrepancies

were noted that they had signed what was put before them without careful review.  The income

and expense schedules filed by the Lawsons with their petition were materially inaccurate.  The

Court finds, however, that such inaccuracies were not the result of any intent on the Debtors'

-12-

part to mislead their creditors or the Court.


CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of

28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the

District Court on July 24, 1984.  A motion to dismiss for substantial abuse is a "core"

bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(J) and (O).

A court may dismiss a Chapter 7 bankruptcy case upon a motion by the United

States Trustee if the case is filed by a debtor with primarily consumer debts and granting relief

would be a substantial abuse of Chapter 7 provisions. 11 U.S.C. § 707(b).  *Collier on Bankruptcy*

points out that Congress was concerned with the abuse of consumer debt and that § 707(b) of the

Code was adopted as "part of a package of consumer credit amendments" included in the

Bankruptcy Amendments and Federal Judgeship Act of 1984.  6 *Collier on Bankruptcy*

¶ 707.LH[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).  Section 707(b) only

applies to an individual debtor whose debts are "primarily consumer debts."  Rule 1017(e) of the

Federal Rules of Bankruptcy Procedure, implementing this section, provides that the "United

States [T]rustee shall set forth in the motion all matters to be submitted to the court for its

consideration at the hearing."  It is unmistakably clear that such motions are not to be readily

granted and that the onus is upon the United States Trustee to prove that the case is abusive, both

by the quoted language in Rule 1017(e) and also by the last sentence in § 707(b), granting a

presumption in favor of the debtor.

-13-

The Bankruptcy Code does not attempt to define "substantial abuse" and courts have struggled to apply this provision given the plethora of factual situations presented by debtors.  In summary, Congress appears to have been concerned about persons who knowingly or recklessly live beyond their means, who live the good life using the resources of their creditors to do so and then choose to walk away from their debts even though they have the financial ability to pay them and although their income levels may have given them the access to the credit markets which have made their liberal lifestyles possible.[3]

The Fourth Circuit Court of Appeals has adopted a "totality of the circumstances" test in determining whether substantial abuse has occurred.  *Green v. Staples (In re Green)*, 934 F.2d 568, 570 (4th Cir. 1991).  In *Green*, the Court listed a number of factors to be considered:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
> (3) Whether the debtor's proposed family budget is excessive or unreasonable;
> (4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
> (5) Whether the petition was filed in good faith.

---

[3] *Collier on Bankruptcy* points out that in enacting § 707(b),

> Congress rejected attempts by the consumer credit industry to permit creditors to move for dismissal of cases on the basis that the debtor had an ability to pay debts.  It also rejected the idea that a case should be dismissed simply because a debtor could pay a "reasonable portion" of his or her debts (defined as 50%), as well as the use of a five year period to determine whether such portion could be paid. The resulting section 707(b) is thus more narrow than the provisions originally sought by the consumer credit industry and targeted only at debtors who can pay their debts without difficulty.

6 *Collier on Bankruptcy* ¶ 707.LH[4] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

*Id.* at 572.  It further held that:

> Exploring these factors, as well as the relation of the debtor's future income to his future necessary expenses, allows the court to determine more accurately whether the particular debtor's case exemplifies the real concern behind Section 707(b): abuse of the bankruptcy process by a debtor seeking to take unfair advantage of his creditors.

*Id.*  The Court in *Green* further pointed out that a vast majority of circuit courts have held that the debtor's ability to repay is the primary factor to be considered.  *Id.*  District Judge Kiser of this District has  analyzed *Green* in *In re Harrelson*, 323 B.R 176 (W.D. Va. 2005).  This opinion offers a thorough recent analysis by a court to which an appeal from this Court lies detailing how a motion pursuant to § 707(b) for alleged substantial abuse ought to be determined.  This Court will undertake, therefore, to apply the methodology of that decision in deciding the present Motion.

*Ability to repay*:

In *Harrelson*, Judge Kiser emphasized that "the ability to repay, although not a dispositive factor, is the primary factor in determining substantial abuse." *Id.* at 179 (citing *Shaw v. U.S. Bankr. Adm'r*, 310 B.R. 538, 540 (M.D. N.C. 2004) and *In re Norris*, 225 B.R. 329, 331-32 (Bankr. E.D. Va. 1998)).  Judge Kiser went on to note that *Green* requires courts to look at the totality of the circumstances.

> A court may not dismiss debtors' ability to repay debts as an irrelevant factor.  On the contrary, it is the primary factor in determining substantial abuse. . . . Courts have held that a debtor's ability to repay weighed in favor of a substantial abuse finding when the debtors could only pay 29% and 47% of their unsecured debt over a period of three years.

*Id.* at 180 (citing *Shaw*, 310 B.R. at 540 and *Norris,* 225 B.R. at 332).  The *Green* opinion

-15-

expressly recognizes, however, that "solvency alone is not a sufficient basis for a finding that the debtor has in fact substantially abused the provisions of Chapter 7." *Green*, 934 F.2d at 572. This Court has made a finding of fact that the Debtors have the ability to propose a 36 month chapter 13 plan which would provide for payment of approximately 62% of their general unsecured debt even if the television set is not surrendered, and 72.7% of such debt if it is surrendered.   Either of these percentages is significantly above the range mentioned favorably in *Harrelson, supra.*  Accordingly, this factor weighs in favor of granting the Motion.

*Petition filed as a result of a sudden illness, calamity, disability or unemployment:*

The court in *Harrelson* held that this factor weighs in favor of dismissal when the filing is not due to some "unforeseen tragedy." *Harrelson*, 323 B.R. at 178 (citing *Norris*, 225 B.R. at 333).  The Debtors do not suggest that their bankruptcy filing is the result of any such factor.  Even though the parties did separate for a relatively short period of time after the purchase of the Jeep Wrangler and before the time of filing, and such circumstance likely contributed in some degree to their financial problems, such occurrence could not reasonably be termed an "unforeseen tragedy", albeit perhaps a difficult time for them both.  Furthermore, this factor was certainly not one beyond their own control.  Accordingly, this factor weighs in favor of granting the Motion.

*Whether the Debtor incurred cash advances or made consumer purchases far in excess of his ability to pay*:

-16-

Case authority on this point varies widely.  In *In re Vansickel*, 309 B.R 189, 211-12 (Bankr. E.D. Va. 2004), the court held that "relatively modest" debts including $28,000 in unsecured debt did not weigh in favor of dismissal, holding that due to the statutory presumption in favor of granting a debtor bankruptcy relief, the United States Trustee did not meet his burden of proof in establishing substantial abuse.  In *In re Norris*, 225 B.R. at 333-34, however, the court held that this factor did weigh in favor of dismissal when the debtors incurred more than $90,000 of unsecured debt, lived in an expensive home, dined out, and utilized their 401(k) plans to create a reserve fund for future expense.  Additionally, another district court held this factor weighed in favor of dismissal when the debtors purchased a $4,000 bedroom suite, spent $1,000 a month for their daughter's college expenses, lived in a home they could not afford but were unwilling to leave, and purchased two new cars.  *Shaw,* 310 B.R. at 540-41.

In this case there has been no claim of use of consumer credit to obtain cash advances.  The United States Trustee has not argued in his post-trial memorandum that the purchases of the big screen television and Jeep Wrangler, unreasonable though they may have been in the context of their existing circumstances, were "far" in excess of their ability to pay. While such purchases certainly are indicative of poor financial judgment and discipline on the Debtors' part, the Court agrees that such purchases did not rise to that difficult to define "far in excess" level.  Accordingly, this factor weighs against granting the Motion.

*Excessive and unreasonable family budget:*

Although the United States Trustee did not challenge the reasonableness of the

-17-

$205 monthly total telephone expense, consisting of $75 for regular phone service and $130 for cell phone service, the Court did inquire of Mrs. Lawson concerning this expense.  It was not satisfied with her response and concludes that such total amount is excessive and unreasonable. In light of their inability to pay their various financial obligations, including a number of relatively small medical bills, the Court also concludes that the $50 per month item for cable service and payment of over $100 a month for a very large screen television set were excessive. While such latter amounts may not be tremendously large in relation to the Debtors' incomes, they signify to the Court their preference to enjoy unnecessary luxuries over paying their creditors what the latter are due.  Accordingly, this factor weighs in favor of granting the Motion.

*Accuracy of the Debtors' schedules:*

In his opinion in *Harrelson,* District Judge Kiser held that under the Fourth Circuit's decision in *Green,* inaccuracy of bankruptcy schedules is a factor, regardless of the Debtor's motive or intent to deceive, and therefore relevant.  *In re Harrelson,* 323 B.R. at 179. The Debtors, by their own actions and the arguments of their counsel, have effectively admitted that not only their original schedules of their income and expenses, but also the amended Schedule I filed following the section 341 meeting of creditors, were inaccurate and materially so.  Accordingly, this factor supports the granting of the Motion, although it will not be accorded the same weight as a finding of intentional misstatement of financial condition made to mislead their creditors or the court.

*Bad faith:*

-18-

District Judge Ellis of the Eastern District of Virginia in *McDow v. Smith*, 295 B.R. 69 (E.D. Va. 2003), a case involving a motion to dismiss for "cause" under 11 U.S.C. § 707(a), stated generally that "a debtor's 'bad faith' or 'lack of good faith' is evidenced by the debtor's *deliberate* acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code." *Id.* at 74 (emphasis added).  Of particular significance on this point would be a finding of wrongdoing on the part of the debtor, either in the accumulation of the debt or in the filing of the Chapter 7 petition.  *Id.* at 82.  Most cases resulting in a finding of bad faith involve egregious factual situations wherein the debtor has accumulated massive amounts of credit card debt with no intent to repay the debt, lives a lifestyle far above what he or she could afford, or intends to avoid a large single debt.  *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991); *see also In re Haddad*, 246 B.R. 27, 38 (Bankr. S.D. N.Y. 2000) (in addition to living an extravagant lifestyle, debtor was not candid in disclosure requirements and attempted to claim a wedding band as exempt while unmarried); *In re Ragan*, 171 B.R. 592, 596 (Bankr. N.D. Ohio 1994) (case dismissed under § 707(b) after debtor withdrew more than $160,000 from IRA and recklessly spent it all with little or no regard for obligations to creditors).  While the Court believes that the Debtors have exhibited poor financial judgment, it does not find bad faith on their part. While their desire to keep a big screen television and continue making payments on it rather than devote their available disposable income to payment of their just debts is not one which can reasonably be expected to engender admiration from either the United States Trustee or this Court, it certainly is not so blameworthy as to constitute an abuse of the provisions or spirit of the Bankruptcy Code.  Therefore, this factor weighs against granting the Motion.

-19-

*Other factors:*

The Court of Appeals's opinion in *Green* did not hold that the factors it

enumerated were exclusive or exhaustive.  It adopted a "totality of circumstances" test which

called for consideration of factors "such as" the ones specifically listed.  *Green,* 934 F.2d at 572;

*see also Vansickel,* 309 B.R. at 169 n.9 (stating that the *Green* list is illustrative rather than

exhaustive).  The parties have not suggested other factors to be considered by the Court and it

has not identified any in its own review of the facts presented.


DECISION

The Court has determined that four of the applicable six factors under the

teaching of *Green* and *Harrelson*, including the most important factor of ability to repay, weigh

in favor of granting the Motion.  Two of the factors, albeit important ones of good faith and the

relatively small amount of their consumer debt, weigh in favor of denying the Motion.   The sum

total of these factors under the instruction of *Harrelson* outweighs under the circumstances

presented here the statutory presumption in favor of Chapter 7 relief provided in 11 U.S.C. §

707(b).  While the Court feels some empathy towards the Debtors in that their case has been

made weaker than it otherwise would have been by the lack of care given to the preparation and

review of the information contained in their schedules, cases such as this point out the critical

importance of bankruptcy debtors and their counsel making certain that their schedules are both

complete and accurate. In the context of a motion to dismiss for alleged substantial abuse, the

Court is bound to apply *Harrelson* and give such factor adverse weight even when it believes

that inaccurate schedules are more the result of sloppiness than intent to deceive.  A distinction

-20-

between cases involving differences in debtor intent might well be decisive in a case involving a more evenly balanced weighing of the applicable factors governing the Court's decision.  Under its view of the case, the Court concludes that it is unnecessary to its decision and inappropriate to determine here whether or not the Debtors would be obliged to surrender their big screen television in order to propose a confirmable chapter 13 plan.

For the reasons stated, the Court by separate order will grant the United States Trustee's Motion to Dismiss unless the Debtors, within fifteen (15) days of the entry of the Court's contemporaneous order carrying out this decision, file a motion to convert their case to one under Chapter 13 of the Bankruptcy Code.

This 30th day of October, 2006.

_____
UNITED STATES BANKRUPTCY JUDGE